**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **JOE CARROLL ZIGLAR,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 2:07cv632-MEF** |
| | ) | |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**UNITED STATES' RESPONSE TO § 2255 MOTION**

COMES NOW the United States of America, by and through its attorney, Leura G.

Canary, United States Attorney, and, in compliance with this Court's order, responds to

Defendant/Movant Joe Carroll Ziglar's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, Or

Correct Sentence By a Person In Federal Custody, as follows:

**I. PROCEDURAL HISTORY AND RELEVANT FACTS**

On September 8, 2005, a grand jury for the Middle District of Alabama returned a one-

count indictment against Defendant/Movant Joe Carroll Ziglar ("Ziglar"). See Exhibit A, the

indictment. The indictment charged that, on or about March 22, 2005, in Montgomery County,

within the Middle District of Alabama, Ziglar, having been convicted of a felony punishable by

imprisonment for a term exceeding one year under the laws of the State of Alabama, did possess

in and affecting commerce a Smith and Wesson firearm, Model 1249, .38 Special Revolver, in

violation of 18 U.S.C. § 922(g)(1).[1]

---

[1]    The indictment alleged that Ziglar had eleven (11) prior felony convictions in the
Circuit Court of Montgomery County, Alabama. All of the convictions were dated October 11,
2000. However, the convictions arose from separate offenses involving thefts and burglaries.

On January 27, 2006, Ziglar agreed to enter a guilty plea to the indictment without a plea agreement. See Exhibit B, a transcript of the guilty plea hearing. At the outset of the hearing, Ziglar consented to having his plea taken by a United States Magistrate Judge. Ziglar was placed under oath. Exhibit B, at 2. The Court stated on the record that there was not a plea agreement in this case, with which government counsel agreed. Id.

The Court began its inquiry into whether Ziglar was competent to enter a plea and questioned him as to his understanding of the charge. Exhibit B, at 3-4. Ziglar informed the Court that he had sat down in Mr. Bethel's office and fully discussed the charge. Id. at 4. Ziglar informed the Court that he was fully satisfied with his counsel and the advice given him. Id. The Court further inquired whether anyone had made any promises or assurances to induce Ziglar to enter a guilty plea, to which Ziglar responded negatively. Id. Next, the Court explained to Ziglar the constitutional rights he would forfeit by entering a guilty plea in lieu of proceeding to trial.

The Court advised Ziglar that the "maximum penalty provided by law [was] no more than two hundred and fifty thousand dollars fine, no less than fifteen years and no more than life imprisonment, or both the fine and the imprisonment" and "no more than five years supervised release, a one hundred dollar assessment fee" and any applicable restitution. Exhibit B, at 5. Defense Counsel, Christine Freeman, stated that the defense believed that Ziglar would be eligible for a sentence from "zero to ten years." Id. Ms. Freeman acknowledged that the range of imprisonment may be contested at sentencing, however, she did not agree with the fifteen year minimum sentence as advised by the Court. Id. Ziglar acknowledged that he understood the

---

Under case numbers CC-2000-1330 thru1332 (two counts of theft of property first, one count of theft of property second); under CC-2000-1333 thru 1336 (each case number contained a theft of property first and a burglary third charge).

penalties without agreeing which range of imprisonment was correct.  Id. at 6.

 The Court explained to Ziglar that the United States Sentencing Guidelines were issued for judges to follow in a criminal case.  However, the Court stated that the sentencing guidelines are now advisory under a recent Supreme Case, which allows the sentencing judge to depart from the guidelines and impose a sentence that is more severe or less severe than the sentence called for by the guidelines.  Ziglar responded affirmatively to this information.  Id. at 8.  Next, the Court explained the charge and government counsel explained the burden of proof that the United States would have to meet in order to convict him of violating 18 U.S.C. § 922(g)(1).  Id. at 9.

 Defense counsel Freeman set forth the predicate questions to satisfy each element of the offense.  Id. at 10.  After hearing Ziglar acknowledge the elements of the offense and plead guilty to Count 1, the Court stated that it found him to be competent and capable of entering an informed plea and that each element of the offense was supported by an independent factual basis.  The Court then accepted Ziglar's guilty plea.

 A presentence investigative report ("PSR") was prepared by the United States Probation Officer.  The report related the following factual circumstances of Ziglar's offense.  At approximately 1:30 a.m., a Montgomery Police Officer, while on patrol, observed a Nissan 240X driving with a blown headlight.  PSR at ¶ 4.  The officer initiated a traffic stop, approached the vehicle, and observed who he later learned to be Joe Carroll Ziglar, the sole occupant of the vehicle.  Id.  Ziglar, while attempting to get out of the vehicle, fell to the ground.  Id.  The officer helped Ziglar to his feet and noticed a strong odor of alcohol on Ziglar.  Id.  In a search incident to Ziglar's DUI arrest, the officer found a .38 caliber handgun under the driver's seat.  Id.  Ziglar

agreed to a police interview, wherein he told the officer that he had purchased the pistol for $50 at Johnny Zips lounge. PSR at ¶ 5. Ziglar also acknowledged that he knew he was prohibited from possessing a firearm. PSR at ¶¶ 5, 8, 9. The presentence report determined that Ziglar's prior criminal history classified him as an armed career criminal pursuant to 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4(b)(3)(B).

Ziglar's sentencing hearing was conducted on December 18, 2006. See Exhibit C, a transcript of the sentencing hearing. The Court began the hearing by asking defense counsel, Donnie Bethel, whether he and his client had had at least 35 days to review the presentence report. Exhibit C at 2. Mr. Bethel responded affirmatively. Id. The Court noted that neither the government nor the defense had any objections to the presentence report. Id. The Court adopted the factual statements contained in the presentence report finding that Ziglar had a guidelines offense level of 30, a criminal history category of VI, and an advisory guidelines range of 180 to 210 months.[2] Before the Court announced sentence upon Ziglar, defense counsel offered two letters and a forensic psychological evaluation as exhibits in support of a lenient sentence for Ziglar. Exhibit C at 4. The exhibits were admitted as Defendant's Exhibits 1, 2, and 3, without objection from the government. Id.

The Court listened to a compassionate argument of defense counsel explaining why he felt Ziglar did not meet the intent of Congress as an armed career criminal. Exhibit C at 5-8. At the conclusion of the defense's arguments, the Court, using the guidelines as advisory and after

---

[2]    Government counsel clarified that Ziglar's advisory guidelines was 168 to 210 months imprisonment. However, because the statutory minimum sentence is 180 months, Ziglar's guidelines would began at 180 months instead of 168 months. There were no objections from the defense.

considering 18 U.S.C. § 3553 in determining what is an appropriate sentence, sentenced Ziglar to 180 months (15 years), five years supervised release, a $100 assessment fee, and advised the defendant of notice of his right to appeal the sentence within ten days. Exhibit C at 10-11. There were no objections to the sentence by any of the parties. Id.  Judgment was entered in Ziglar's case on December 19, 2006.

Ziglar filed this Motion to Vacate, Set Aside or Correct Sentence on July 11, 2007. On July 12, 2007, the Court ordered that the United States Attorney file a response to Ziglar's motion within thirty (30) days from the date of the order resulting in a due date of August 13, 2007. The United States was granted an extension until September 24, 2007, in order to secure the sentencing transcript. The United States now files this response to Ziglar's § 2255 motion.

## II. CLAIMS RAISED IN THE § 2255 MOTION

Ziglars' claims raise a number of issues that can best be described as ineffective assistance of counsel. For the purpose of consistent responses, the United States has grouped the claims based upon subject matter as follows:

A.    Counsel was ineffective for failing to properly advise Ziglar of the charges in the indictment and the appropriate limits of punishment.

(1)    Ziglar alleges his sentence was enhanced from 60 months to 180 months without the Grand Jury convening.
(2)    Ziglar alleges that the Grand Jury did not convene to change the indictment and it was not signed by a foreperson.

B.    Counsel was ineffective for failing to convey the United States's plea offer of ten (10) years imprisonment.

C.    Counsel was ineffective for allowing Ziglar to enter a guilty plea that was not knowing and voluntary and for failing to bring to the Court's attention Ziglar's alleged physical and mental health conditions.

(1)    Counsel knew that Ziglar was ill and his medication affected his decision to enter a guilty plea.

(2)    Reasonable Counsel would have advised the Court that Ziglar should discontinue medication that interfered with his reasoning before entering a guilty plea.

(3)    Ziglar was suffering from paranoia that is supported by his mental health records.

(4)    Ziglar signed documents out of ignorance and fear and not out of understanding.

(5)    Ziglar pleaded guilty because Defense Counsel Christine Freeman said she could get the sentence down to three (3) years.

(6)    Ziglar was advised by Defense Counsel Donnie Bethel that a trial of any type or any type of appeal would be fruitless and serve as no relief.

D.    Counsel was ineffective for not filing for a downward departure motion.

E.    Counsel was ineffective for failing to appeal from the final judgment and sentence.

### III.   RESPONSE TO CLAIMS FOR RELIEF

**1.    Ziglar Has Met The One-Year Statute Of Limitations Deadline For The Filing of Claims Under 28 U.S.C. § 2255**.

The United States acknowledges that Ziglar has filed his motion in a timely manner under paragraph six of 28 U.S.C. § 2255, which provides a one-year period of time within which to file a motion under the rule.  The applicable provision in this case requires that a movant file his § 2255 motion within one year from "the date on which the judgment of conviction became final."

Ziglar was sentenced on December 18, 2006, and judgment was entered on December 19, 2007.  He did not appeal his sentence to the Eleventh Circuit Court of Appeals.  Although not specifically addressing the application of the statute of limitations to the 10-day notice of appeal requirement, the Eleventh Circuit has held that a judgment of conviction becomes final for someone who appeals to an appellate court when the time for seeking certiorari review in the Supreme Court expires.  See Kaufman v. United States, 282 F.3d 1336, 1337-39 (11th Cir.

2002).  Likewise, a judgment of conviction becomes final for someone who does not appeal when the time for seeking that appeal expires.  Ziglar had ten days from the December 19, 2006, entry of judgment by this Court to seek review by the Eleventh Circuit, and his sentence became final when the time for filing an appeal expired on December 24, 2006 - the first business day occurring after December 24, 2007.  Therefore, under § 2255, Ziglar had until January 1, 2008, to file his motion.  He filed his motion on July 11, 2007.  The motion to vacate is timely.

        **2**.     **Ineffective Assistance of Counsel Generally.**

Ziglar has made several claims of ineffective assistance of counsel in violation of the Sixth Amendment of the United States Constitution.  The benchmark evaluating any claim of ineffective assistance of counsel is (1) whether counsel's performance fell below an objective standard of reasonable professional assistance and (2) was the defendant prejudiced by the deficient performance.  Strickland v. Washington, 466 U.S. 669, 687, 694 (1984).  In making a determination whether a lawyer has been ineffective, Strickland makes clear that if a defendant fails to meet his or her burden or proof as to any one of the two grounds, the Court would have no reason to address both components**.**  Thus, as to each claim of ineffective assistance of counsel, if Ziglar fails to show that he was prejudiced at the alleged fault of his counsel, this Court may reject Ziglar's claim without determining whether the counsel's performance was deficient.  See Coulter v. Herring, 60 F.3d 1499, 1504 n.8 (11th Cir. 1995).

    Because a lawyer is presumed to be competent to assist a defendant, the burden is on the accused to demonstrate that he was denied the effective assistance of counsel.   United States v. Cronic, 466 U.S. 648, 658 (1984).  The petitioner has the burden of persuasion, by a preponderance of competent evidence, to show that his lawyer's performance was unreasonable.

Chandler v. United States, 218 F.3d 105, 1313 (11th Cir. 2000).  In Chandler, the Eleventh Circuit

held that although the burden of persuasion is not insurmountable, it is a heavy burden.  Id.  The

reason being, courts "must avoid second-guessing counsels' performance" (quoting Strickland,

466 U.S. at 689).  Moreover,  "Courts must 'indulge [the] strong presumption' that counsel's

performance was reasonable and that counsel 'made all significant decisions in the exercise of

reasonable professional judgment..'"  Chandler, 218 F.3d at 1313, (quoting Strickland, 466 U.S.

at 689-90).  Finally, if the record is incomplete or unclear, it is presumed that counsel was

competent in exercising reasonable professional judgment.  Chandler, 218 F.3d at 1314-1315 n.

15.

> **A.      Counsel Was Not Ineffective For Failing To Properly Advise Ziglar Of The
> Charge In The Indictment And The Appropriate Limits of Punishment.**

Ziglar's first claim infers that the grand jury returned two indictments against him, both

charging him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

Ziglar infers that the first indictment limited his punishment to sixty (60) months imprisonment,

and the second indictment enhanced his punishment to one hundred and eighty (180) months

imprisonment.  See (Motion to Vacate, Doc. cv-1 at  pp. 1, 8, 10, 13, 17)[3].  Ziglar also alleges

that the grand jury reconvened without his knowledge and that the foreperson failed to sign the

second indictment.  Since there was one indictment returned against Ziglar in this case, any

ineffective assistance of counsel claim regarding a second indictment is unfounded. Ziglar has

also misinterpreted the limits of punishment for his charged offense.

Ziglar's failure to raise this claim on direct appeal bars its presentation in this collateral

---

[3]      Criminal documents will be referred to as Doc. cr-___, with the specified page
number.  Civil documents will be referred to as Doc. cv-___, with the specified page number.

proceeding unless he can show cause and prejudice to overcome this procedural bar. A motion

under § 2255 cannot be used as a substitute for appeal. <u>Burke v. United States</u>, 152 F.3d 1329,

1331 (11th Cir. 1998), and claims not raised on direct appeal that could have been are generally

barred from review in § 2255 proceedings, <u>McCoy v. United States</u>, 266 F.3d 1245 (11th Cir.

2001). In <u>United States v. Tyndale</u>, 209 F.3d 1292, 1295 (11th Cir. 2000), the Eleventh Circuit

held that a defendant has a substantial right to know statutory maximum and minimum terms

applicable. Ziglar could have appealed his sentence on direct appeal if he believed his statutory

minimum sentence should have been less than fifteen years. <u>See</u> <u>McCoy</u>, 266 at 1258 ("A claim

not raised on direct appeal is procedurally defaulted unless the petitioner can establish cause and

prejudice for his failure to assert his claims on direct appeal."). The burden of demonstrating

cause and prejudice or a miscarriage of justice is on the movant. <u>See</u> <u>Bousley v. United States</u>,

523 U.S. 614, 622 (1998) ("Where a defendant has procedurally defaulted a claim by failing to

raise it on direct review, the claim may be raised in a habeas only if the defendant can first

demonstrate 'cause' and actual 'prejudice,'...or that he is 'actually innocent[.]'"). Ziglar has

failed to show cause and actual prejudice in this case.

At the change of plea hearing, Ziglar was advised by the Court that his minimum sentence

was fifteen (15) years imprisonment and his maximum sentence was life imprisonment. Ziglar,

through Counsel Christine Freeman ("Freeman")<sup>4</sup> stated that Ziglar did not agree with the

minimum and maximum ranges provided by the Court. Freeman has provided an affidavit in this

case. Doc. cv-4. Contrary to Ziglar's claims, Freeman explained in her affidavit that her

---

<sup>4</sup>    Federal Defender Christine Freeman represented Ziglar during the change of plea
hearing, and Deputy Federal Defender Donnie Wayne Bethel represented Ziglar during the
sentencing hearing.

comments regarding the range of punishment was to protect the record by making sure "that silence in response to the Court's notice of penalty would not be interpreted as concession ." Doc. cv-4 at p. 3.   In addition, Freeman explains that she wanted to "preserve all possible objections to sentencing under the Armed Career Criminal Act." Freeman never stated that Ziglar would receive a sentence of three years.  The change of plea transcript is clear that Freeman only stated that she believed Ziglar was eligible for a sentence from zero to ten years. Exhibit C, at 5; Doc. cv-4, at p. 2.

The Court's limits of punishment included an enhancement based upon 18 U.S.C. § 924(e), and not by a second indictment as he alleges.  Title 18 U.S.C. § 924(e) provides that if a defendant has three prior felony convictions for a serious drug offense and a violent crime, or one of each, and thereafter violates § 922(g)(1), he shall be sentenced to not less than 15 years.  Since Ziglar's limits of punishment were controlled by statute, and his counsel could not have made a difference in the statutory law, Ziglar has failed to show that he was prejudiced by counsel's performance.

**B.    Counsel Was Ineffective for Failing to Convey the United States's Plea Offer of Ten (10) Years Imprisonment.**

Ziglar next claims that he was offered a ten year plea agreement by the government and his counsel failed to convey the offer.  First, on behalf of the United States, the defendant was never offered a plea agreement of ten years imprisonment.  Freeman states in her affidavit that she had no knowledge of a ten year plea agreement. Other than Ziglar's assertion, there is not evidence that he was ever offered such a plea agreement.  This claim should be denied simply as a fabulation .

10

**C.**    **Counsel Was Ineffective for Failing to Bring to the Court's Attention Ziglar's Alleged Physical and Mental Health Conditions.**

Ziglar suggests that his guilty plea was not knowing and voluntary, because he was under the influence of prescription medications during his guilty plea hearing which affected his ability to understand the nature and consequences of the guilty plea.

Under the Federal Rules of Criminal Procedure, Rule 11 requires a district court "to conduct a searching inquiry into the voluntariness of a defendant's guilty plea." See United States v. Siegel, 102 F.3d 477, 481 (11th Cir. 1996). The "three core objectives" of Rule 11 are to ensure that (1) a guilty plea is not the product of coercion, (2) the defendant understands the nature of the charges, and (3) the defendant understands the consequences of pleading guilty. United States v Camacho, 233 F.3d 1308, 1314 (11th Cir. 2000). In determining whether the district court met the requirements of Rule 11, the record itself is support.

During the change of plea, the Magistrate Judge and the Movant had the following colloquy:

THE COURT: How old are you?

THE DEFENDANT: Forty-one years old.

THE COURT: How far did you go in school?

THE DEFENDANT: I have fifty-eight hours towards a degree in theology.

THE COURT: Have you been treated recently for any mental illness or addiction to narcotic drugs of any kind?

THE DEFENDANT: I have been treated for many years because I'm disability. I see a psychiatrist. I see a regular M.D. for my physical problems.

11

THE COURT: Okay. But have you been treated for any mental illness or addiction?

THE DEFENDANT: Yes, ma'am.

THE COURT: Are you currently under the influence of any drug, medication or alcoholic beverage of any kind?

THE DEFENDANT: No, ma'am.

THE COURT: And does any of your treatment or any underlying illness that you're being treated for give you any problem understanding me today?

THE DEFENDANT: No, ma'am.

THE COURT: Do you understand me?

THE DEFENDANT: Yes, ma'am.

Exhibit B, pp 3-4.

The Magistrate next inquired whether Ziglar received a copy of the indictment, whether he had gone over the charges against him with his attorney, and whether he understood the charges against him. Ziglar acknowledged that he had received a copy of the indictment and had "sat down in [Mr. Bethel's] office," he understood the charges, and he was fully satisfied with the representation and advice of Mr. Bethel. Exhibit B, at p. 4. Ziglar did not answer any of the questions posed to him in such a manner that would cause the court to look behind the answers provided by the defendant. Finally, the Magistrate Judge asked Ziglar had anyone made any promises or assurances to induce him or force him to plead guilty. Again, Ziglar responded negatively to each inquiry. Based upon Ziglar's admission to the elements of the offense and his answers to the above described questions, the Magistrate Judge found that Ziglar was "fully competent and capable of entering an informed plea, that [Ziglar was] aware of the nature of the

12

charges and the consequences of the plea, and that the plea of guilty [was] a knowing and voluntary plea supported by an independent [bases] in fact..."

Defense counsel Donnie W. Bethel ("Bethel") submitted an affidavit in opposition to Ziglar's motion to vacate.  Doc. cv-6.  Bethel stated that because he was aware of Ziglar's medications, he "acquired and reviewed" Ziglar's medical and mental health records.  Bethel also had Ziglar evaluated by Dr. Catherine Boyer who concluded that although Ziglar does have a mental health issue, he was currently rational and understood the wrongfulness of his actions and the consequences of the charged offense.  Bethel presented Dr. Boyer's report as Defendant's Exhibit 3, during the sentencing hearing.  Doc. cr-5-3; Exhibit C, at 4.  The Magistrate Judge properly concluded that Ziglar entered a knowing and voluntary guilty plea.  Ziglar himself repeatedly acknowledged that he understood the nature of the proceedings, and defense counsel took the appropriate steps to assure that Ziglar entered a knowing and voluntary guilty plea. Ziglar has failed to demonstrate that his guilty plea did not meet the requirements of Rule 11. Therefore, Ziglar's claims that he signed documents and made statements because he did not understand, are unfounded.

To the extent that Ziglar claims that his counsel's promise of a three year sentence was some form of inducement for his guilty plea, Ziglar is incorrect.  The discussion at the change of plea between the Court, defendant's counsel, Ziglar, and the government was abundantly clear that the minimum sentence Ziglar could receive was not less than fifteen (15) years.  Whether or not Ziglar and his counsel agreed with the limits of punishment provided by the Court and confirmed by the government, the record is clear that Ziglar was properly advised of the correct limits of punishment in his case.  Exhibit C, at pp. 5-6.

13

**D.    Counsel Was Not Ineffective For Failing To File A Motion For Downward Departure.**

Ziglar next claims that his counsel was ineffective for failing to file a motion for a downward departure. However, Ziglar does not state the bases for such a motion. Assuming, arguendo, that Ziglar is asserting a claim for diminished capacity consistent with his previous claims of mental and physical illness. This claim has been previously resolved as unfounded and unsupported by facts. Ziglar's therapist found that in spite of his prior mental conditions, Ziglar was competent to enter a guilty plea and understood the consequence of such a plea.

**E.    Counsel Was Not Ineffective For Failing to File An Appeal Of The Final Judgment And Sentence.**

Ziglar's final claim is that his counsel did not file an appeal of the final judgment and sentence in his case, and he did not know that he could have filed an appeal. This issue was addressed in a recent Eleventh Circuit Case, Victor Otero v. United States, ___ F.3d ___, 2007 WL 2694612 (C.A. 11(Fla)). In Otero, the Eleventh Circuit, being consistent with Strickland's holding, "rejected a bright-line rule" "that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient." See also Roe v. Flores-Ortega, 528 U.S. 470, 479 (2000). The Court in Flores-Ortega held that counsel will only have a constitutional duty to consult with the defendant regarding an appeal if "there is reason to believe (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal, or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Flores-Ortega, at 480. Applying these two concepts to the instant case, the question becomes, did Ziglar have any potential non-frivolous issues for appeal, given the fact that there was a guilty plea with no plea agreement. First, during

the sentencing hearing, Ziglar was advised that he had the right to appeal and ten days in which to do so. Exhibit C, at p. 13.  Moreover, Ziglar was told that if he could not afford an attorney, he would be provided with a lawyer and a free transcript in order to appeal his sentence.  Ziglar stated that he understood his right to appeal.  The government submits that Ziglar received the lowest possible sentence he could receive under the statute.  It was Ziglar's criminal history of violent crimes and not the advisory sentencing guidelines that controlled the length of Ziglar's sentence.  It should also be noted that during the sentencing hearing, Ziglar's counsel successfully argued for the lowest sentence of fifteen (15) years.  The government concurred in the requested fifteen (15) years sentence.  An appeal of the fifteen (15) years would have been a frivolous appeal since an appeal would not have changed Ziglar's prior convictions for violent crimes.

Second, there is no evidence that Ziglar demonstrated to counsel that he was interested in appealing his sentence.  The only evidence thus far that Ziglar wished to appeal his sentence is contained in this motion to vacate under § 2255.  Ziglar is proceeding pro se in this proceeding. In the past seven months, there is no evidence that Ziglar has written his trial lawyer requesting an appeal, or that Ziglar has mailed any inquiry or request to the Court regarding an appeal in his case.  Therefore, we will assume, as the Court did in Otero, that Ziglar's lawyers failed to consult Ziglar about an appeal.  However, based upon the circumstances of this case, there is no evidence to support that this failure constitutes a deficient performance.  Therefore, Ziglar has failed to sustain his burden of showing he was prejudiced in any way because his lawyers failed to file an appeal on his behalf.

## IV.    A LIMITED HEARING IS APPROPRIATE IN THIS MATTER

With the exception of Joe Carroll Ziglar's claim that counsel was ineffective due to their failure to file an appeal, he has not pleaded facts or presented sufficient evidence or argument which, if true, would show that he is entitled to an evidentiary hearing, and his claims for relief on his competency to enter a guilty plea should be denied without an evidentiary hearing.  See Blacklidge v. Allison, 431 U.S. 63, 73-74 (1977); Tejada v. Dugger, 941 U.S. 1551, 1559 (11th Cir. 1991); United States v. Laetividal-Gonzalez, 939 F. 2d 1455, 1465 (11th Cir. 1991). However, the United States believes that a limited hearing should be conducted on the issue of whether counsel was ineffective for failing to file an appeal in this case

## V.  CONCLUSION

For the above reasons, Defendant/Movant Joe Carroll Ziglar has failed to demonstrate that he is entitled to any relief from this Court, and his § 2255 motion should be denied without an evidentiary hearing.  Should this Court determine that Joe Carroll Ziglar has made any arguments not addressed in this response, the United States would request the opportunity to further respond to those arguments.

Respectfully submitted on this the 24th day of September 2007.

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/Tommie Brown Hardwick
TOMMIE BROWN HARDWICK
131 Clayton Street
Montgomery, AL 36104
Phone:  (334) 223-7280
Fax:  (334) 223-7135
E-mail:  tommie.hardwick@usdoj.gov
ASB4152 W86T

# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| **JOE CARROLL ZIGLAR,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 2:07cv632-MEF** |
| | ) | |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Christine A. Freeman, Esq., and Donnie Wayne Bethel, Esq., and I hereby certify that I have mailed by United States Postal Service the documents to the following non-CM/ECF participant: Joe Carroll Ziglar, #11780-002, Federal Correctional Institution, PMB 1000, Talladega, Alabama 35160.

Respectfully submitted,

/s/Tommie Brown Hardwick
TOMMIE BROWN HARDWICK
131 Clayton Street
Montgomery, AL 36104
Phone: (334) 223-7280
Fax: (334) 223-7135
E-mail: tommie.hardwick@usdoj.gov
ASB4152 W86T

EXHIBIT "A"

FILED

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

SEP - 8 2005

CLERK
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA.

UNITED STATES OF AMERICA            )
                                    )       CR. NO. 2:05CR 197-F
            v.                      )       [18 USC 922(g)(1)]
                                    )
JOE CARROLL ZEIGLER                 )       INDICTMENT

The Grand Jury charges:

## COUNT 1

On or about March 22, 2005,  in Montgomery County, within the Middle District of

Alabama,

JOE CARROLL ZEIGLER,

defendant herein, having been convicted on or about the dates set forth below of the offenses set

forth below, each a felony punishable by imprisonment for a term exceeding one year under the laws

of the State of Alabama:

| CONVICTION DATE | COURT | CASE NUMBER | OFFENSE |
|---|---|---|---|
| October 11, 2000 | Circuit Court of Montgomery County, Alabama | CC-2000-1330 | Theft of Property (1st Degree) |
| October 11, 2000 | Circuit Court of Montgomery County, Alabama | CC-2000-1331 | Theft of Property(1st Degree) |
| October 11, 2000 | Circuit Court of Montgomery County, Alabama | CC-2000-1332 | Theft of Property (2nd Degree) |
| October 11, 2000 | Circuit Court of Montgomery County, Alabama | CC-2000-1333 | Theft of Property (1st Degree), Burglary (3rd Degree) |

| October 11, 2000 | Circuit Court of Montgomery County, Alabama | CC-2000-1334 | Theft of Property (1st Degree), Burglary (3rd Degree) |
|---|---|---|---|
| October 11, 2000 | Circuit Court of Montgomery County, Alabama | CC-2000-1335 | Theft of Property (1st Degree), Burglary (3rd Degree) |
| October 11, 2000 | Circuit Court of Montgomery County, Alabama | CC-2000-1336 | Theft of Property (1st Degree), Burglary (3rd Degree) |

did knowingly possess in and affecting commerce firearm, to-wit: a Smith and Wesson, Model 1249, .38 Special Revolver, serial number 85080, in violation of Title 18, United States Code, Section 922(g)(1).

FORFEITURE ALLEGATION

A.    Count 1 of this indictment is hereby repeated and incorporated herein by reference.

B.    Upon conviction for the violation of Title 18, United States Code, Section 922(g)(1), as alleged in Count 1 of this indictment, the defendant,

JOE CARROLL ZEIGLER,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 924, and Title 28, United States Code, Section 2461(c), all firearms and ammunition involved in the commission of this offense, including but not limited to the following:

**One Smith and Wesson, Model 1249, .38 Special Revolver, Serial Number 85080.**

C.    If any of the property described in this forfeiture allegation, as a result of any act or omission of the defendant:

(1)    cannot be located upon the exercise of due diligence;

(2)    has been transferred, sold to, or deposited with a third person;

2

(3)    has been placed beyond the jurisdiction of the court;

(4)    has been substantially diminished in value; or,

(5)    has been commingled with other property which cannot be divided without

difficulty, the United States, pursuant to Title 21, United States Code, Section 853, as incorporated

by Title 28, United States Code, Section 2461(c), intends to seek an Order of this Court forfeiting

any other property of said defendant up to the value of the property described in the above

paragraphs.

All in violation of Title 18, United States Code, Section 922.

A TRUE BILL:

Foreperson

LEURA GARRETT CANARY
United States Attorney

TOMMIE BROWN HARDWICK
Assistant United States Attorney

JOHN T. HARMON
Assistant United States Attorney

3

EXHIBIT "B"

```
 1            IN THE UNITED STATES DISTRICT COURT
                             FOR
 2            THE MIDDLE DISTRICT OF ALABAMA

 3

 4

 5

 6    THE UNITED STATES
         OF AMERICA
 7                                   CRIMINAL ACTION NO.
            vs.
 8                                   2:05-CR-197-MEF

 9    JOE CARROLL ZEIGLER

10

11

12

13

14                  CHANGE OF PLEA PROCEEDINGS

15

16

17

18                  *  *  *  *  *  *  *  *  *  *

19

20

21    HEARD BEFORE:      The Hon. Myron H. Thompson

22    HEARD AT:          Montgomery, Alabama

23    HEARD ON:          January 27, 2006

24    APPEARANCES:       Tommie Hardwick, Esq.

25                       Christine Freeman, Esq.
```

```
 1    WHEREUPON, THE FOLLOWING PROCEEDINGS WERE HEARD BEFORE THE HON.
      SUSAN RUSS WALKER ON JANUARY 27, 2006 AT THE UNITED STATES
 2    COURTHOUSE IN MONTGOMERY, ALABAMA:

 3

 4              THE COURT:  This is United States vs. Joe Carroll

 5    Zeigler, 2:05-CR-197-F.  We're here for a change of plea.

 6              Previously the Court was informed that the defendant

 7    wishes to change his plea and consents to having the guilty

 8    plea proceedings conducted by a United States magistrate judge.

 9    I'm a United States magistrate judge.  The next higher ranking

10    judge is a district judge and you have the right to have a

11    district judge take your plea.  If you wish to have me to take

12    your plea today, you need to read and sign the consent form

13    that's been given you.

14              (Whereupon, the defendant and defense counsel

15    executed said document.)

16              THE COURT:  Am I right there's no plea agreement of

17    any kind in this case?

18              MS. HARDWICK:  That is correct, Your Honor.

19              THE COURT:  All right.  Let's swear in the defendant.

20              (Whereupon, the defendant was duly sworn by the

21    courtroom deputy clerk.)

22              THE COURT:  Mr. Zeigler, do you understand that you

23    are now under oath, and that if you answer any of the questions

24    asked here falsely, your answers may later be used against you

25    in another prosecution for perjury or making a false statement?
```

```
1    A.   Yes, ma'am.

2              THE COURT:  Would you state your name, please.

3    A.   My name is Joe Carroll Zeigler.

4              THE COURT:  How old are you?

5    A.   Forty-one years old.

6              THE COURT:  How far did you go in school.

7    A.   I have fifty-eight hours towards a degree in theology.

8              THE COURT:  Have you been treated recently for any

9    mental illness or addiction to narcotic drugs of any kind?

10   A.   I have been treated for many years because I'm on

11   disability.  I see a psychiatrist.  I see a regular M. D. for

12   my physical problems.

13             THE COURT:  Okay.  But have you been treated for any

14   mental illness or addiction?

15   A.   Yes, ma'am.

16             THE COURT:  You have?  Okay.

17             Are you currently under the influence of any drug,

18   medication or alcoholic beverage of any kind?

19   A.   No, ma'am.

20             THE COURT:  And does any of your treatment or any

21   underlying illness that you're being treated for give you any

22   problem understanding me today?

23   A.   No, ma'am.

24             THE COURT:  Do you understand me?

25   A.   Yes, ma'am.
```

1          THE COURT:  Have you received a copy of the

2     indictment pending against you, that is the written charges

3     made against you in this case?

4     A.  Yes, ma'am.

5          THE COURT:  Have you fully discussed those charges

6     and the case in general with Ms. Freeman as your counsel or

7     with Mr. Bethel?

8          MS. FREEMAN:  I'm actually standing in for Mr.

9     bethel, Your Honor.

10          THE COURT:  All right.  Let me ask you have you fully

11     discussed the charges and the case in general with Mr. Bethel

12     as your counsel?

13     A.  Yes, ma'am.  We sat down in his office.

14          THE COURT:  Are you fully satisfied with the counsel,

15     representation and advice given to you in this case by your

16     attorney, Mr. Bethel, and also Ms. Freeman?

17     A.  Yes, Your Honor.

18          THE COURT:  Has anyone made any promise or assurance

19     to you of any kind in an effort to induce you to plead guilty

20     in this case?

21     A.  No, ma'am.

22          THE COURT:  Has anyone attempted in any way to force

23     you to plead guilty?

24     A.  No, ma'am.

25          THE COURT:  Are you pleading guilty of your own free

```
 1   will because you are guilty?

 2   A.  Yes, ma'am.

 3          THE COURT:  Do you understand that the offense to

 4   which you are pleading guilty --

 5          It is just one count, is it not?

 6          MS. HARDWICK:  That's correct, Your Honor.

 7          THE COURT:  All right.  The offense to which you are

 8   pleading guilty is a felony offense, and that if your plea is

 9   accepted you will be adjudged guilty of that offense and that

10   such adjudication may deprive you of valuable civil rights such

11   as the right to vote, the right to hold public office, the

12   right to serve on a jury and the right to possess any kind of

13   firearm?

14   A.  Yes, ma'am.

15          THE COURT:  The maximum penalty provided by law for

16   this offense is no more than two hundred and fifty thousand

17   dollars fine, no less than fifteen years and no more than life

18   imprisonment, or both the fine and the imprisonment, no more

19   than five years supervised release, a one hundred dollar

20   assessment fee and you may be asked to make restitution to any

21   victim of the offense.

22          MS. FREEMAN:  Your Honor, we believe that Mr. Zeigler

23   will be eligible for the sentence from zero to ten years.  We

24   understand that that may be contested at sentencing, but we do

25   not agree that the maximum sentence in this case would be
```

1  potentially life.

2      THE COURT:  All right.

3      MS. HARDWICK:  And, Your Honor, I think the Court is

4  correct in advising the maximum sentence that he will be

5  facing.  Which means if the convictions do apply, that would be

6  the range.  Obviously if he falls below, he has been advised of

7  the possible maximum sentence.

8      THE COURT:  All right.  I'll continue, then, with

9  this advice with regard to the maximum without any indication

10  from the defendant that he agrees to that, and we'll proceed.

11      The possibility of the term of supervised release

12  causes me also to need to advise you that if you violate the

13  conditions of supervised release, you can be given additional

14  time in prison.  Do you understand that?

15  A.  Yes, ma'am.

16      THE COURT:  Do you understand that the Government is

17  seeking forfeiture in this case?

18      MS. FREEMAN:  Of the firearm, Your Honor.

19      THE COURT:  Of the firearm?

20  A.  Yes, ma'am.

21      THE COURT:  Do you understand you must pay a special

22  assessment fee of one hundred dollars in this case?

23  A.  Yes, ma'am.

24      THE COURT:  Do you understand that under the

25  Sentencing Reform Act of 1984 the United States Sentencing

1     Commission has issued guidelines for judges to follow in

2     determining the sentence in a criminal case?

3     A.  Yes, ma'am.

4              THE COURT:  Do you understand that under a recent

5     Supreme Court law, that the sentencing guidelines are now

6     considered to be advisory guidelines?

7     A.  Yes, ma'am.

8              THE COURT:  Have you and your attorney talked about

9     how the advisory sentencing guidelines might apply to your

10    case?

11    A.  Yes, ma'am.

12             THE COURT:  Do you understand that the Court will not

13    be able to determine the guidelines sentence for your case

14    until after the presentence report has been completed and you

15    and the Government have had an opportunity to challenge the

16    reported facts and the application of the advisory guidelines

17    recommended by the probation officer, and that the sentence

18    imposed may be different from any estimate that your attorney

19    or the probation officer or anyone else may have given you?

20    A.  Yes, Your Honor.

21             THE COURT:  Do you also understand that after your

22    advisory guideline range has been determined, the Court has the

23    authority in some circumstances to depart from the advisory

24    guidelines and impose a sentence that is more severe or less

25    severe than the sentence called for by those guidelines?

1    A.  Yes, Your Honor.

2           THE COURT:  Do you also understand that parole has

3    been abolished, and that if you are sentenced to prison you

4    will not be released on parole?

5    A.  Yes, ma'am.

6           THE COURT:  Do you also understand that under some

7    circumstances you or the Government may have the right to

8    appeal any sentence that the Court imposes?

9    A.  Yes, Your Honor.

10          THE COURT:  Do you understand that you have the right

11    to plead not guilty to any offense charged against you and to

12    persist in that plea, that you would then have the right to a

13    trial by jury, that at trial you would be presumed to be

14    innocent and the Government would have to prove your guilt

15    beyond a reasonable doubt?

16    A.  Yes, Your Honor.

17          THE COURT:  Do you understand that you would have the

18    right to the assistance of counsel for your defense, the right

19    to see and hear all the witnesses and have them cross examined

20    in your defense, the right on your own part to decline to

21    testify unless you voluntarily elected to do so in your own

22    defense, and the right to the issuance of subpoenas or

23    compulsory process to compel the attendance of witnesses to

24    testify in your defense?

25    A.  Yes, Your Honor.

```
 1          THE COURT:  Do you understand that should you decide
 2   not to testify or put on any evidence, these facts cannot be
 3   used against you?
 4   A.  Yes, Your Honor.
 5          THE COURT:  Do you further understand that by
 6   entering a plea of guilty, if that plea is accepted by the
 7   district judge, there will be no trial and you will have waived
 8   or given up your right to a trial, as well as those other
 9   rights associated with a trial as I just described them?
10   A.  Yes, Your Honor.
11          THE COURT:  The charge to which you are pleading
12   guilty is set out in count one of the indictment which charges
13   that on or about March 22nd, 2005 in Montgomery County within
14   the Middle District of Alabama, that you, having been convicted
15   of a number of felonies, which are set out in a chart in the
16   indictment, knowingly possessed in and affecting commerce a
17   firearm; that is, a Smith & Wesson model twelve-forty nine
18   thirty-eight special revolver with the serial number eight five
19   zero eight zero in violation of 18 U. S. C., Section 922(g)(1).
20   Do you understand that's the charge to which you are pleading
21   guilty?
22   A.  Yes, ma'am.
23          THE COURT:  Do you want me to go over the different
24   convictions here, or do you understand those?
25   A.  I know.  I understand.
```

```
 1            THE COURT:  Okay.  Does the Government have the
 2    elements of this offense?
 3            MS. HARDWICK:  Yes, Your Honor.  The first element is
 4    that the defendant knowingly possessed a firearm in and
 5    affecting interstate commerce as charged in the indictment.
 6    Secondly, that before the defendant possessed the firearm,
 7    which would be on March 22nd, 2005, the defendant had been
 8    convicted in a court of a crime punishable by imprisonment for
 9    a term in excess of one year; that is, a felony offense.
10            THE COURT:  All right.  Mr. Zeigler, did you
11    understand those elements as they were just laid out?
12    A.  Yes, ma'am.
13            THE COURT:  I need to find whether or not there is a
14    factual basis for the plea.  How would y'all like to handle
15    that?
16            MS. FREEMAN:  May I proceed Your Honor?
17            THE COURT:  Yes.
18            MS. FREEMAN:  Mr. Zeigler, were you convicted of a
19    felony in the Circuit Court of Montgomery County in October of
20    2000?
21    A.  Yes, ma'am.
22            MS. FREEMAN:  And on March 22nd, 2005 in Montgomery
23    County were you found to be in possession of a firearm?
24    A.  Yes, ma'am.
25            MS. FREEMAN:  And at the time that you possessed that
```

1    firearm were you aware that you had that prior felony

2    conviction?

3    A.  Yes, ma'am.

4         MS. FREEMAN:  Were you aware that it was illegal for

5    you to possess a firearm?

6    A.  I knew and I pushed it down deep.  And it's not that I'm

7    opposing the law for this, but that particular night was a bad

8    night for me and I violated.  I broke the law by having that

9    gun, yes, ma'am.

10        MS. FREEMAN:  All right.  Do you stipulate that the

11   gun traveled in interstate commerce, specifically that it was

12   manufactured outside the states of Alabama?

13   A.  Yes, ma'am.

14        MS. FREEMAN:  Your Honor, I believe that lays out the

15   factual basis.

16        THE COURT:  Anything else?

17        MS. HARDWICK:  One exception, Your Honor.  That the

18   felony that he was convicted of in October 2000, that the

19   punishment was for an imprisonment.  Not that he actually was

20   punished, but the punishment would have exceeded a year and a

21   day.

22        THE COURT:  Do you agree?

23   A.  Yes, ma'am.

24        THE COURT:  All right.

25        MS. HARDWICK:  The Government is satisfied.

1     THE COURT:  How do you now plead to the charge

2  against you in count one of the indictment, guilty or not

3  guilty?

4  A.   I plead guilty, Your Honor.

5     THE COURT:  It is the finding of the Court in the

6  case of *United States Joe Carol Zeigler* that the defendant is

7  fully competent and capable of entering an informed plea, that

8  the defendant is aware of the nature of the charges and the

9  consequences of the plea, and that the plea of guilty is a

10 knowing and voluntary plea supported by an independent basis in

11 fact containing each of the essential elements of the offense.

12 The plea is therefore accepted, and defendant is now adjudged

13 guilty of that offense.

14     A written presentence report will be prepared by the

15 probation office to assist the Court in sentencing.  You will

16 be asked to give information for the report.  Your attorney may

17 be presented for that if you wish.  The Court will permit you

18 and your counsel to read the presentence report and file any

19 objections to it before the sentencing hearing.  You and your

20 counsel will have the opportunity to speak on your behalf at

21 the sentencing hearing.

22     The sentencing hearing will be set by order.  The

23 date of that will be set by order.

24     And with regard to release, the release status report

25 indicates that you have complied with the conditions of release

1    and all instructions given by the probation office.  Your urine

2    screens have returned negative results and the probation

3    officer recommends that you be continued on pretrial release

4    until sentencing.  And under those circumstances, I will

5    continue you under the same conditions imposed on September

6    16th, 2005.  We'll see you back here for sentencing when the

7    date is set.

8              Anything else?

9              MS. HARDWICK:  No, Your Honor.

10             THE COURT:  Thank you.

11             MS. FREEMAN:  Thank you.

12             COURTROOM DEPUTY CLERK:  Court is recessed.

13             (Whereupon, the proceedings were concluded.)

14

15

16

17

18

19

20

21

22                      *  *  *  *  *  *  *

23

24

25

1

2                    COURT REPORTER'S CERTIFICATE

3

4

5        I certify that the foregoing is a correct transcript

6    from the record of proceedings in the above-entitled

7    matter as prepared by me to the best of my ability.

8

9        I further certify that I am not related to any of

10    the parties hereto, nor their counsel, and I have no

11    interest in the outcome of said cause.

12

13        Dated this 2nd day of March 2006.

14

15

16                    MITCHELL  P.  REISNER,  CM,  CRR
                      Official US Dist. Court Reporter
17                    Registered Professional Reporter
                      Certified   Real-Time   Reporter
18

19

20

21

22

23

24

25

1

1          IN THE UNITED STATES DISTRICT COURT

2          FOR THE MIDDLE DISTRICT OF ALABAMA

3                  NORTHERN DIVISION

4

5   UNITED STATES OF AMERICA

6       vs.                    CR NO:  05cr-197-LSC

7   JOE CARROLL ZIGLAR,

8

9

10                * * * * * * * * * *

11                  SENTENCE HEARING

12                * * * * * * * * * *

13       Before the Honorable L. SCOTT COOGLER,

14          United States District Judge,

15      At Montgomery, Alabama, on December 18, 2006

16                * * * * * * * * * *

17

18  APPEARANCES:

19  FOR THE GOVERNMENT: Tommie Brown Hardwick,
                        Assistant United States Attorney
20
    FOR THE DEFENDANT: Donnie W. Bethel,
21                      Federal Defender

22

23

24

25

1           (The above case coming on for hearing at

2    Montgomery, Alabama, on December 18, 2006, before the

3    Honorable L. Scott Coogler, United States District Judge,

4    the following proceedings were had commencing at

5    11:40 a.m.:)

6           THE COURT:  All right.  This is United States of

7    America versus Joe Ziglar, case number 05-197.  We are

8    here for the purpose of sentencing the Defendant.  Is the

9    government ready to proceed?

10          MS. HARDWICK:  Yes, sir, Your Honor.

11          THE COURT:  Is the defense ready to proceed?

12          MR. BETHEL:  Yes, Your Honor.

13          THE COURT:  Mr. Bethel, have you and your client

14   had at least 35 days to review the presentence report?

15          MR. BETHEL:  Yes, Your Honor.

16          THE COURT:  Do you have any objections to the

17   presentence report?

18          MR. BETHEL:  No, Your Honor.

19          THE COURT:  The government have any objections to

20   the presentence report?

21          MS. HARDWICK:  No, Your Honor.

22          THE COURT:  There being no objections the Court

23   adopts the factual statements contained in the presentence

24   report and makes specific findings that the guideline

25   offense level is 30, criminal history category is VI, and

3

1 the advisory guideline imprisonment range is from one

2 hundred and 80 months to 210 months, supervised release

3 period from three years to five years, a fine range from

4 15 thousand to one hundred and 50 thousand dollars.

5        MS. HARDWICK:  Your Honor, could I reference one

6 area?

7        THE COURT:  Pardon?

8        MS. HARDWICK:  The advisory guidelines is 168 to

9 210 and the statutory minimum is the 180 to 210.

10        THE COURT:  Right.  Because of the statutory

11 minimum being 180 it's automatically brought up to 180 to

12 210.  It was originally -- it calculates out to be 160 or

13 whatever, but because of the application of the guidelines

14 it would automatically bump it up to 180 to --

15        MS. HARDWICK:  Yes, sir.

16        THE COURT:  I will go back to that.  180 to 210

17 months.  Have I missed that?

18        PROBATION OFFICER:  No, Your Honor.

19        THE COURT:  Okay.  All right.  I note the

20 Defendant is in custody for some such of a reason right

21 now, but there's no request that anything be modified with

22 regard to him so let's move to the next part.  Mr. Bethel,

23 would you and your client approach the podium for me,

24 please.  Do you have anything to say in mitigation or

25 otherwise before I pronounce sentence of law upon your

4

1   client?

2          MR. BETHEL:  Yes, Your Honor, I have a couple of

3   exhibits -- three actually I would like to offer to the

4   Court at this time.

5          THE COURT:  All right.

6          MR. BETHEL:  Defendant's Exhibit 1 is a letter

7   from Mr. Zig Ziglar who is a relative of Mr. Ziglar, as

8   well as a letter from Lorie Majors who also works for

9   Mr. Ziglar.  And Defendant's Exhibit 3 -- the second

10  letter is Defendant's Exhibit 2 -- Defendant's Exhibit 3

11  is a forensic psychological evaluation from Doctor

12  Katherine Bowyer that I would offer.  And I would ask that

13  that be sealed due to the sensitive nature of the

14  information that's contained therein.  And all of these

15  exhibits have previously been provided to Ms. Hardwick for

16  her review.

17         THE COURT:  Any objection to that request?

18         MS. HARDWICK:  No, Your Honor.

19         THE COURT:  All right.  Exhibit 2 is the psyche

20  eval?

21         MR. BETHEL:  No, Exhibit 3 is the psyche eval.

22         THE COURT:  Okay.  I will seal it.  The others

23  are admitted.  Pass them to me when you get them in.

24         THE CLERK:  Okay.  (complies)

25         THE COURT:  Is there anything else?

1    MR. BETHEL: Yes, Your Honor. I would -- I feel

2    compelled at this time to at least make a little bit of a

3    speech from the soap box. I understand this is an Armed

4    Career Criminal Act case and that the Court's hands are

5    tied in a very substantial way in this kind of a case. I

6    would just simply point out that this is an atypical case

7    for an Armed Career Criminal Act case. In fact, if you

8    look at Mr. Ziglar's criminal history outside of about a

9    16 day window in April of 2000 he has no criminal history

10   absent a bounced check misdemeanor back in '97 and a

11   reckless driving offense that's even older than that.

12   By his own admission Mr. Ziglar was addicted to

13   crack cocaine back in 2000. He burglarized a series of

14   unoccupied churches down in Hope Hull and stole from a

15   relative. And as he has expressed to me on a previous

16   occasion, it was like one long day. And it was obviously

17   due to a drug addiction. Not that that's an excuse but

18   it's certainly a factor in that.

19   He was doing fine. He was released from prison

20   back in 2001 and had no problems until 2005 and was

21   depressed. And you can see from the presentencing

22   investigation report as well as Doctor Bowyer's report

23   that Mr. Ziglar has a history of depression, bipolar

24   disorder. Purchased a handgun. At a bar one night, had

25   too much to drink, was pulled over for driving under the

6

1  influence and readily admitted there was a gun in the car

2  and he knew he wasn't supposed to have it.

3       But outside of that 16 day window in April, but

4  for that this is a very different case.  And I would

5  contrast this case with a case with which the Court is

6  very familiar, and that would be the case of Mr. Marvin

7  Darby.  I know the Court is familiar with that case

8  because the Court sentenced Mr. Darby as an Armed Career

9  Criminal after hearing a trial in that case.  And I would

10  submit to the Court that the Armed Career Criminal Act was

11  specifically designed to address entractable,

12  recalcitrant, repeat offenders like Mr. Darby who had

13  spent 12 of the previous 15 years in prison.  Who, when he

14  would commit a crime, be caught, prosecuted, convicted,

15  put into prison, get out, short period of time would pass,

16  he would commit another crime, get caught, get convicted,

17  get sent back to prison.  He truly was a career criminal.

18  That was his chosen profession.  Larceny, burglary, that's

19  what he did for a living.  And that's in my opinion what

20  the Armed Career Criminal Act is truly designed to

21  address.

22       Mr. Ziglar received in essence one sentence for

23  his previous offenses.  They were -- by the time they

24  identified Mr. Ziglar as the perpetrator in those offenses

25  they had -- he had committed all of them.  He pled guilty,

7

1   he accepted responsibility.  He received the same sentence

2   in each of those prior seven felonies.  And that was a

3   sentence of ten split three.  And so I would say that

4   that's -- he is exactly not the poster child for the Armed

5   Career Criminal Act.  He's exactly what the act really

6   wasn't designed for.  He wasn't what the Congress when

7   they passed that law really envisioned.  It was the Marvin

8   Darbys of this world that were really the focus of the

9   Armed Career Criminal Act.

10         I would, for instance, point out that had he been

11  sentenced to rather than seven separate case numbers for

12  those felonies, if there had only been one case number, if

13  he had been prosecuted for all of them together, it would

14  only be one previous sentence.  He would still be Armed

15  Career Criminal but his guideline category would be IV

16  rather than VI.  I feel as though this is a case where I

17  should be standing in front of the Court arguing for a

18  sentence of two, three or four years, and obviously I

19  can't do that because the mandatory-minimum in this case

20  is a hundred 80 months.

21         I would point out to the Court that with

22  acceptance, but for the statutory minimum, even with

23  category VI he would be a hundred and 68 to 210 months, so

24  we have already moved from a hundred 68 to a hundred 80

25  due to the mandatory-minimum.  And I would simply point

8

1   out to the Court that based on Mr. Ziglar's history that

2   it really in my opinion over-represents his criminal

3   history based on the circumstances that I have identified

4   for the Court.

5        THE COURT:  Let me interrupt you.  Isn't the

6   government asking for a -- recommending the low end of the

7   guidelines?

8        MS. HARDWICK:  Your Honor, there's not a plea

9   agreement in this case.  However, the government does not

10  object to the mandatory-minimum 15.

11       THE COURT:  If I am intending to give him that do

12  you want to say anything else?

13       MR. BETHEL:  No, Your Honor.

14       THE COURT:  You are welcome to, I just determined

15  what you said when I -- I could see exactly what you were

16  saying that all of his criminal conduct appeared to be on

17  a very short occasion.

18       MR. BETHEL:  No, I -- obviously the Court

19  understands my point, so that's sufficient, Your Honor.

20  Mr. Ziglar would just like to say a couple of words.

21       THE COURT:  Mr. Ziglar, this is your opportunity

22  to say anything you want to say in mitigation or otherwise

23  before I pronounce the sentence of law upon you.

24       THE DEFENDANT:  The only thing I would like to

25  say, Your Honor, is that I am guilty.  I do accept

9

1  responsibility for this.  I am very sorry for it.  I wish

2  it hadn't happened but I can't undo it.  I'm sorry for my

3  family and for taking up your time and everyone's time.

4  Thank you.

5          THE COURT.  How do you spell your last name?

6          THE DEFENDANT:  Z-I-G-L-A-R, sir.

7          THE COURT:  Do we know that the caption and style

8  in this case is misspelled?

9          PROBATION OFFICER:  Your Honor, I noted it in the

10 presentence report.

11         THE COURT:  Is there any need to -- will that be

12 picked up automatically with aliases and et cetera or will

13 there be a need to modify that in any way before I enter a

14 judgment?

15         MS. HARDWICK:  Your Honor, the government can

16 file a motion to reflect the Z-E-I-G-L-E-R spelling as

17 well as the corrected version that is in the presentence

18 report.  However, the government would also note that the

19 prior criminal convictions which are marked for admission

20 without objection from the defense counsel are the prior

21 convictions, which are C-C-0-0 --

22         THE COURT:  I know the case numbers.

23         MS. HARDWICK:  Those are all in the spelling of

24 Z-E-I-G-L-E-R, which is where the government got the

25 spelling from in drafting the indictment.

1          THE COURT:  All right.  Well, I will note for the

2    record that the Defendant has indicated he spells his name

3    Z-I-G-L-A-R, and that it would be appropriate that the

4    judgment be entered to at least reflect that.  And the

5    government, I would expect you to file a motion today with

6    regard to that.

7          MS. HARDWICK:  Your Honor, can the motion reflect

8    both spellings --

9          THE COURT:  Yes.

10         MS. HARDWICK:  -- so it will be consistent with

11   his prior convictions?

12         THE COURT:  Yes.  Any objection to that from the

13   defense?

14         MR. BETHEL:  No, Your Honor.

15         THE COURT:  I would run it past the defense if

16   you would before you file it, and then once I see it

17   unless, Mr. Bethel, you tell me differently, unless you

18   file an objection immediately, then I will assume that you

19   have no objection to the government's motion.

20         MR. BETHEL:  Very well, Your Honor.

21         THE COURT:  Okay.  All right.  Mr. Ziglar, the

22   guideline range -- guideline offense calculations arrive

23   at a guideline range which is advisory to the Court.  It's

24   not mandatory, and I note that.  I am to consider the

25   factors in 18 U.S.C. Section 3553 in determining what is

11

1   an appropriate sentence.  I have done that.  And I believe
2   as I have said before that a one hundred 80 months
3   sentence, which is 15 years, is appropriate with regard to
4   this Defendant.
5           Therefore, pursuant to the Sentencing Reform Act
6   of 1984, it is the judgment of the Court that the
7   Defendant is hereby committed to the custody of the Bureau
8   of Prisons to be imprisoned for a term of 180 months.
9   Following your imprisonment you shall be placed on
10  supervised release for a period of five years.  While on
11  supervised release you will comply with the standard
12  mandatory conditions of record of this Court.
13          In addition, you will comply with the following
14  special conditions:  You will comply with -- or submit to
15  the search of your person, residence or office or vehicle
16  pursuant to the search policy of this Court; you will also
17  cooperate with the collection of DNA as directed by the
18  probation office; third, you shall participate in the
19  mental health treatment and shall contribute to the cost
20  of any treatment based on your ability to pay and the
21  availability of third-party payments under the
22  administrative supervision of the probation office; and
23  fourth, you shall submit to drug testing as directed by
24  the probation officer, and further drug treatment under
25  the administrative supervision of the probation office.

12

1  You are ordered to pay a special assessment fee to the

2  United states Government in the amount of one hundred

3  dollars.   That assessment fee is due immediately.   I am

4  not going to impose a fine due to your inability to pay a

5  fine.   Restitution is not an issue in this case.

6          Is there any objection from any party as to the

7  findings of calculations of sentence or the manner in

8  which the sentence was pronounced or imposed?

9          MR. BETHEL:  No, Your Honor.

10          MS. HARDWICK:  No, Your Honor.  The government

11  would just like to have the seven exhibits which are the

12  prior convictions that Mr. Bethel does have a copy made a

13  part of the record.

14          THE COURT:  Okay.  They will be Government's

15  Exhibits 1 through what?

16          MS. HARDWICK:  One through seven, Your Honor, the

17  prior convictions.

18          THE COURT:  Any objection?

19          MR. BETHEL:  No, Your Honor.

20          THE COURT:  They will be admitted.  Is his family

21  from Montgomery?

22          MR. BETHEL:  Yes, Your Honor.

23          THE COURT:  Do you want me to ask that he be

24  housed as close to there or does he want to be close to --

25  is that his brother or father, Zig Ziglar?

1          MR. BETHEL:  No, that's an uncle.  Yes, as close

2     as possible to Montgomery would be fine, Your Honor.

3          THE COURT:  All right.  Then I will make that

4     request.  You have the right to appeal the sentence

5     imposed within ten days if you believe it's in violation

6     of the law.  However, you must file your notice of appeal

7     within ten days of judgement being entered in your case.

8     You may, however, have waived some or all of your rights

9     to appeal as part of your plea agreement.  If so, such

10    waivers are generally found to be enforceable.  If you

11    believe it's unenforceable you can present that theory to

12    the appropriate appellate court.  With few exceptions,

13    however, any notice of appeal must be filed within ten

14    days of judgement being entered in your case.  If you do

15    not have the ability to pay the cost of such an appeal you

16    may apply for leave to appeal in forma pauperis and the

17    appointment of counsel.  If granted, the Clerk of Court

18    will assist you in filing your notice of appeal.  Any

19    questions?

20         THE DEFENDANT:  No.

21         THE COURT:  Thank you all for coming back and

22    allowing us to get this done today.  Have a Merry

23    Christmas.

24         PROBATION OFFICER:  Your Honor, I have one

25    matter.  There is a petition that remains pending for

14

1  violation of a bond.  It might be appropriate for the

2  Court to address that at this time.  I would recommend

3  that that petition be dismissed and the Defendant remanded

4  to custody today.

5          THE COURT:  He is remanded to custody to begin

6  service of his sentence at this time and I will dismiss

7  the petition to I guess revoke his bond.  Is that what it

8  was?

9          PROBATION OFFICER:  Yes, sir.

10          THE COURT:  Okay.

11    (At which time, 11:59 a.m., the hearing was adjourned.)

12              * * * * * * * * * * *

13              COURT REPORTER'S CERTIFICATE

14          I certify that the foregoing is a correct

15  transcript from the record of proceedings in the

16  above-entitled matter.

17          This 8th day of August, 2007.

18                              /s/ James R. Dickens
19                              Official Court Reporter

20

21

22

23

24

25