IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JOE CARROLL ZIGLAR, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:07cv632-MEF |
| | ) | (WO) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.   INTRODUCTION**

Joe Carroll Ziglar ("Ziglar") asks the court to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  On September 8, 2005, a federal grand jury returned a one-count indictment charging Ziglar with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  Ziglar appeared before the undersigned magistrate judge on January 27, 2006, and pled guilty to the charge in the indictment.[1]  Sentencing was held on December 18, 2006.  The district court sentenced Ziglar as an armed career criminal to the mandatory minimum term of 180 months in prison.  *See* 18 U.S.C. § 924(e).  Judgment was entered on December 19, 2006.  Ziglar did not appeal.

On July 6, 2007 (Doc. No. 1), Ziglar, acting *pro se*, filed a 28 U.S.C. § 2255 motion alleging that his trial counsel was ineffective for the following reasons:

---

[1]There was not a plea agreement in Ziglar's case.

1.      Counsel failed to file an appeal on his behalf after he indicated a desire to appeal his sentence.

2.      Counsel failed to bring his mental health problems and the fact that he was under the influence of medication to the court's attention, thereby allowing him to enter a guilty plea that was not knowing and voluntary.

3.      Counsel induced him to plead guilty by assuring him, incorrectly, that he would receive a sentence of between two to three years in prison.

4.      Counsel failed to inform him that the government had made a plea offer of 10 years in prison or to advise him to accept the government's offer.

5.      Counsel failed to inform him that the original indictment was "changed" to charge him as an armed career criminal, increasing the mandatory minimum sentence to 180 months in prison.

6.      Counsel failed to move for a downward sentencing departure on his behalf.

The government filed an answer arguing that Ziglar's claims lack merit and therefore afford him no basis for relief.  (Doc. No. 8.)  Ziglar was allowed an opportunity to respond to the government's answer and did so.  (Doc. No. 10.)  This court ascertained the need for an evidentiary hearing, with particular concern for Ziglar's allegations regarding his counsel's failure to file an appeal.  Consequently, the court appointed attorney Everett Urech to represent Ziglar regarding on evidentiary hearing on his § 2255 claims.  (Doc. No. 41.) The evidentiary hearing was held on June 24, 2009.  Ziglar's § 2255 motion has been submitted on the pleadings, written submissions, and the evidentiary hearing.  For the reasons that now follow, this court concludes that the § 2255 motion should be denied.

## II.   DISCUSSION

### A.   Standard of Review for Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel is governed by the standards of *Strickland v. Washington*, 466 U.S. 668 (1984).  *Grossman v. McDonough*, 466 F.3d 1325, 1344 (11th Cir. 2006).   Under *Strickland*'s two-part test, a petitioner must demonstrate (1) that "counsel's representation fell below an objective standard of reasonableness" and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (internal quotation marks omitted); *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable.  *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted).  The court will "avoid second-guessing counsel's performance:  It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted).  Thus, "[g]iven the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." *Id*.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied.  *Strickland*, 466 U.S. at 687.  Accordingly, once a court decides that one of the requisite showings has not been made, it need not decide whether the

3

other one has been. *Id.* at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

### 1.      Failure to File Appeal

Ziglar contends that his lawyer, Donnie W. Bethel,[2] rendered ineffective assistance of counsel by failing to file an appeal on his behalf after he indicated to Bethel that he wished to appeal his sentence. *See § 2255 Motion* (Doc. No. 1) at 5 & 8; *Supplemental Pleading to § 2255 Motion* (Doc. No. 38) at 1-2.

In *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the Supreme Court held that *Strickland v. Washington*, 466 U.S. 668 (1984), applies to determine whether counsel was ineffective for failing to file a notice of appeal. *Flores-Ortega*, 528 U.S. at 477. With respect to the first prong of *Strickland* – whether counsel's representation fell below an objective standard of reasonableness – the Supreme Court reaffirmed that "an attorney who fails to file an appeal on behalf of a client who specifically requests it acts in a professionally unreasonable manner per se." *Gomez-Diaz v. United States*, 433 F.3d 788, 791-92 (11th Cir. 2005) (citing *Flores-Ortega*, 528 U.S. at 477). Moreover, even if the client does not directly request an appeal, counsel generally has a duty to consult with him about an appeal. *See Flores-Ortega*, 528 U.S. at 480-81. "[W]here a defendant has not specifically instructed his attorney to file an appeal, [the court] must still determine 'whether counsel in fact consulted with the defendant about an appeal.'" *Thompson v. United States*, 504 F.3d 1203, 1206 (11th Cir.

---

[2]Bethel, an attorney with the office of the Federal Defender for the Middle District of Alabama, was Ziglar's lead counsel. Christine A. Freeman, also an attorney with the Federal Defender's office, stood in for Bethel at Ziglar's change of plea hearing. Bethel was present during all other proceedings in Ziglar's case, including his sentencing hearing.

2007) (quoting *Flores-Ortega*, 528 U.S. at 478).  The Supreme Court held that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega*, 528 U.S. at 480.  The Supreme Court defined the term "consult" specifically to mean "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id*. at 478.  If an attorney acts contrary to his client's wishes by failing to file a requested appeal, or if the attorney fails to fulfill his duty to attempt to determine his client's wishes, "prejudice is to be presumed, and [a defendant] is entitled to an out-of-time appeal, regardless of whether he can identify any arguably meritorious grounds for appeal[.]"[3]  *Gomez-Diaz*, 433 F.3d at 793.

At the evidentiary hearing on his § 2255 motion, Ziglar testified that, following a meeting at the United States Probation Office sometime before his sentencing hearing, he told Bethel that he wanted to challenge the probation officer's recommendation in the presentence investigation report ("PSI") that he be sentenced as an armed career criminal, which carried a mandatory minimum term of 180 months (15 years) in prison.[4]  Although

---

[3]The Eleventh Circuit has interpreted *Flores-Ortega* to mean that prejudice to a defendant is presumed if counsel failed to file a direct appeal as requested, even when the defendant has waived the right to file an appeal in a plea agreement.  *See Gomez-Diaz*, 433 F.3d at 791-94.

[4]The probation officer classified Bennett as an armed career criminal under 18 U.S.C. § 924(e) based on his four prior felony burglary convictions.  *See* 18 U.S.C. § 924(e)(2)(ii); *PSI* at 5, (continued...)

Ziglar was uncertain whether he specifically instructed Bethel at that time that he wanted to appeal, he testified that he made it clear to Bethel that he was not satisfied with the 180-month sentence and that he wanted Bethel to "do whatever he could about it."  Ziglar testified that Bethel responded by telling him that there were no grounds for challenging the sentence and that his colleagues in the Federal Defender's office agreed with him on this matter.  According to Ziglar, after this conversation with Bethel, he believed Bethel did not intend to challenge his sentence and that "nobody was trying to help me."

Ziglar further testified that he had no recollection of specifically asking Bethel to file an appeal after he was sentenced.  He stated that although Bethel visited him in the city jail shortly after the sentencing hearing, there was no discussion about a possible appeal at that time.  By that point, Ziglar said, he felt as though he had been "abandoned" by his counsel.  Ziglar maintained that he believed Bethel did not personally like him, that he and Bethel "never got along well," and that the two of them had difficulty understanding one another.

Ziglar testified that sometime after sentencing, he sent the district court a letter in which he indicated that he wanted to appeal his sentence.  However, he acknowledged that he never told Bethel he mailed such a letter, and he could not recall whether he mailed the letter within ten days after his sentencing.

In his testimony at the evidentiary hearing, Bethel stated unequivocally that Ziglar never instructed him at any time to file an appeal. Bethel testified that, prior to the sentencing

---

[4](...continued)

¶ 17.

hearing, he made it clear to Ziglar that an appeal would be fruitless; that if he were sentenced as an armed career criminal, the best he could hope for was the 180-month statutory minimum; and that if he received the 180-month minimum, there would be no reason to appeal because there would be nothing to gain under the circumstances.  According to Bethel, Ziglar fully understood these matters and acquiesced in the decision not to pursue an appeal.

Bethel testified that his primary focus leading up to Ziglar's sentencing hearing was to attempt to find some way around application of the Armed Career Criminal Act.  He acknowledged that, prior to sentencing, Ziglar advised him that he wanted to challenge any sentence as an armed career criminal.  He maintained that this was exactly what he did on behalf of his client.  In this regard, Bethel testified that he investigated the possibility that Ziglar's prior multiple burglaries might be treated as a single continuing act for sentencing purposes.  However, he determined that the case law would not support such an argument. In addition, Bethel researched various statutory provisions in hope of finding some avenue for avoiding application of the Armed Career Criminal Act to Ziglar.  He also talked to the prosecutors in Ziglar's case, asking them if they might modify the charges, or even drop the charges entirely, so that Ziglar would not be subject to sentencing as an armed career criminal.  All of these efforts by Bethel to avoid application of the Armed Career Criminal Act to his client proved unavailing, however.

Bethel testified that, at the sentencing hearing, after Ziglar's 180-month sentence was announced, he and Ziglar "looked at each other with a look of mutual resignation [and]

7

nodded our heads, because we knew we had done whatever we could." According to Bethel, he then told Ziglar "'that means there's nothing to appeal,' and [Ziglar] simply didn't say a word, just nodded his head in resignation, and that was the end of the discussion." Bethel stated that when he went to see Ziglar in the city jail shortly after sentencing, Ziglar made no mention of an appeal. He stated that Ziglar's main concern during this meeting was ensuring his transfer from the city jail to the custody of the Federal Bureau of Prison. Bethel testified that he was unaware of the contents of any letter Ziglar sent to the district court following sentencing and that he did not learn Ziglar was dissatisfied with the way he had handled his case until some five months after the sentencing hearing.

Because Ziglar's testimony fails to establish that he specifically requested Bethel to file on appeal on his behalf, the court considers the decisive question here to be whether Bethel consulted with Ziglar about an appeal by advising him of the advantages and disadvantages of taking an appeal and making a reasonable effort to discover his wishes. *Flores-Ortega*, 528 U.S. at 478; *Thompson*, 504 F.3d at 1206. To the extent that the testimony of Ziglar and Bethel on this issue cannot be reconciled, the court finds Bethel's version of events is the more credible one. The court therefore credits Bethel's testimony on this issue and finds Ziglar's testimony, where it differs in its essentials from Bethel's, not to be credible. Bethel was appointed by the court to represent Ziglar. Consequently, he had no direct pecuniary interest in the outcome of the case. Nor does Bethel have any other evident interest in the outcome of this case that undercuts his credibility. Ziglar, on the other hand, obviously has a strong interest in the outcome of this case. His obvious interest in a

8

favorable outcome in this proceeding militates against his credibility.[5]  Further, Ziglar's own testimony fails to show that he did not understand his appeal rights or that, after he was sentenced, he ever indicated to Bethel that he desired to appeal.

Accordingly, the court finds (1) that Ziglar was fully aware of his appeal rights, including the advantages and disadvantages of taking an appeal, and (2) that Ziglar did *not* instruct Bethel to file an appeal or otherwise indicate an actual interest in appealing. Consequently, the court concludes that Ziglar has not demonstrated that Bethel rendered ineffective assistance of counsel by failing to file a requested appeal or failing to fulfill his duty to attempt to determine his client's wishes.  *See Flores-Ortega*, 528 U.S. at 478.  Ziglar is therefore not entitled to any relief based on this claim.

### 2.  Ziglar's Mental Health Problems and the Voluntariness of His Guilty Plea

Ziglar contends that, during the guilty plea proceedings, he was under the influence of prescription medication for mental health problems, which he says impeded his ability to understand the consequences of his plea.  He argues that his counsel provided ineffective assistance by failing to bring his mental health problems and the fact that he was under the influence of medication to the court's attention and by allowing him to enter a guilty plea that

---

[5]In making its credibility determination, the court recognizes that it is improper to determine credibility based solely on the "status" of a witness.  *See United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002).  Thus, neither Ziglar's status as a convicted felon nor Bethel's status as a lawyer is determinative.  Rather, the court has weighed the testimony of the witnesses in light of all the facts, taking into account their interests in the outcome of the proceedings, the consistencies or inconsistencies in their testimony, and their demeanor on the stand.  *Ramirez-Chilel*, 289 F.3d at 749.

was not knowing and voluntary.  *See § 2255 Motion* (Doc. No. 1) at 6-8 & 15-17; *Addendum to §  2255 Motion* (Doc. No. 3) at 2-4.

The following relevant exchange between the court and Ziglar took place during the plea colloquy:

> THE COURT:  How old are you?
>
> THE DEFENDANT:  Forty-one years old.
>
> THE COURT:  How far did you go in school?
>
> THE DEFENDANT:  I have fifty-eight hours towards a degree in theology.
>
> THE COURT:  Have you been treated recently for any mental illness or addiction to narcotic drugs of any kind?
>
> THE DEFENDANT:  I have been treated for many years because I'm on disability.  I see a psychiatrist.  I see a regular MD for my physical problems.
>
> THE COURT: Okay.  But have you been treated for any mental illness or addiction?
>
> THE DEFENDANT:   Yes, ma'am.
>
> THE COURT:  You have?  Okay.
>
> Are you currently under the influence of any drug, medication or alcoholic beverage of any kind?
>
> THE DEFENDANT:  No, ma'am.
>
> THE COURT:  Any does any of your treatment or any underlying illness that you're being treated for give you any problem understanding me today?
>
> THE DEFENDANT:  No, ma'am.

10

> THE COURT:  Do you understand me?
>
> THE DEFENDANT:  Yes, ma'am.

*Change of Plea Hearing* (Doc. No. 8, Gov. Exh. B) at 3.

Notwithstanding these averments to the court during his plea hearing, Ziglar testified at the evidentiary hearing on his § 2255 motion that he was unable to understand the proceedings when entering his guilty plea because he was "heavily sedated" and under the influence of Xanax, a medication that had been prescribed to treat his depression.  Ziglar maintained that when the court had asked him during the plea colloquy whether he was under the influence of any drug, medication, or alcoholic beverage, he believed the court's inquiry was limited to illegal drugs or alcohol, so he had answered in the negative.

Christine A. Freeman, director of the Federal Defender's office, is the attorney who stood in for Bethel and represented Ziglar at the change of plea hearing.  At the evidentiary hearing on Ziglar's § 2255 motion, Freeman testified that she was aware at the time of the plea hearing that Ziglar had been taking medication.  She stated, however, that she noticed nothing about Ziglar's demeanor on the day of the plea hearing that suggested to her that he was unable to understand the proceedings.  She stated that if she went into a plea hearing with a client whom she believed could not understand the proceedings due to the effects of medication, she would not go forward with the proceeding.

For his part, Bethel testified that he was aware of, and concerned about, Ziglar's mental health problems.  Consequently, after taking on Ziglar's case, he had a psychologist examine Ziglar.  The psychologist concluded that Ziglar was competent to understand the

11

proceedings and to assist in his own defense. Bethel testified that, in terms of Ziglar's mental health issues, his greatest concern was that Ziglar was extremely despondent, possibly even suicidal, over the prospect of receiving a lengthy prison sentence. He testified that he had no doubts however about Ziglar's competency to assist in his own defense or to understand the proceedings.

In an affidavit filed with this court prior to the evidentiary hearing, Bethel stated that he was prepared to offer evidence of Ziglar's mental health history at his sentencing hearing in an effort to work Ziglar's sentence down to the lower end of the statutory minimum. *Affidavit of Donnie W. Bethel* (Doc. No. 5) at 3. However, because the court sentenced Ziglar to the statutory minimum, the mental health evidence became unnecessary. *Id.* In any event, the sentencing transcript reflects that Bethel did in fact present the court with records relating to Ziglar's mental health and drug and alcohol addiction issues.[6] *See Sentencing Hearing* (Doc. No. 8, Gov. Exh. C) at 4-8.

Weighing the testimony and other averments of Ziglar's counsel against Ziglar's testimony at the evidentiary hearing and the allegations in his § 2255 motion, and considering the record in this case, the court concludes that Ziglar fails to establish that his guilty plea was unknowing and involuntary or that his counsel rendered ineffective assistance by failing

---

[6]These records included a forensic psychological evaluation of Ziglar that indicated he had a history of depression, bipolar disorder, and substance abuse problems. The PSI also detailed Ziglar's history of mental health issues. Although Ziglar asserts that there were additional medical and mental health records his counsel should have presented to the court that would have affected the outcome of his sentencing, see Addendum to § 2255 Motion (Doc. No. 3) at 2, he fails to establish that the introduction of such records would indeed have resulted in a lesser sentence.

to bring his mental health problems and the fact that he was under the influence of medication to the court's attention.  This conclusion is bolstered in part by Ziglar's own statements to the court during the change of plea hearing, in which Ziglar affirmed that he was not then under the influence of any drug, medication, or alcoholic beverage and that he understood the proceedings.  "Solemn declarations in open court (at the guilty plea hearing) carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings."  *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

Absent a showing of deficient performance by counsel or resulting prejudice, Ziglar is not entitled to any relief based on this claim of ineffective assistance of counsel.  *See Strickland*, 466 U.S. at 687-89.

### 3.   Counsel's Assurances Regarding Sentence

Ziglar contends that Freeman induced him to plead guilty by assuring him that he would receive a sentence of between two to three years' imprisonment.  *See § 2255 Motion* (Doc. No. 1) at 11-12 & 18.

At the evidentiary hearing on his § 2255 motion, Ziglar testified that in an anteroom of the courtroom, following the entry of his guilty plea, Freeman told him that he could "look for a two- to three-year sentence."  In making this claim, Ziglar does not explain how, if Freeman made such a statement to him after he pleaded guilty, he was induced into pleading guilty by Freeman's alleged assurances in this regard.  Freeman also testified concerning this matter and strongly denied making such a statement to Ziglar at any time.  Freeman stated that, given her understanding that Ziglar was eligible to be sentenced as an armed career

13

criminal with a minimum sentence of 15 years, she would not have advised Ziglar that he was facing a sentence of only two to three years.

Having observed the witnesses and evaluated their testimony as to this issue, the court finds that Freeman's version of events is the more credible one.  Therefore, the court credits Freeman's testimony on this issue and finds Ziglar's testimony at the evidentiary hearing not to be credible.  The court's determination is again bolstered by consideration of the transcript of the change of plea hearing, where the court clearly advised Ziglar that the minimum sentence he faced was 15 years' imprisonment and Ziglar also affirmed to the court that no one had made any promises or assurances to him to induce his guilty plea.  *See Change of Plea Hearing* (Doc. No. 8, Gov. Exh. B) at 4-8.  Thus, the court finds that Freeman made no assurances to Ziglar that he would receive a sentence of between two to three years.  Consequently, Ziglar has not demonstrated deficient performance by counsel or any resulting prejudice, and he is not entitled to relief based on this claim of ineffective assistance of counsel.  *Strickland*, 466 U.S. at 687-89.

### 4.    Failure to Convey Plea Offer

In his § 2255 motion, Ziglar alleges that Freeman failed to inform him before he pled guilty that the government had made a plea offer of 10 years' imprisonment and then failed to advise him to accept this offer.  *See § 2255 Motion* (Doc. No. 1) at 11; *Addendum to § 2255 Motion* (Doc. No. 3) at 3.  However, at the evidentiary hearing on his § 2255 motion, Ziglar, through counsel, withdrew this claim, acknowledging that no such plea offer had been conveyed by the government.  Accordingly, Ziglar does not demonstrate deficient

14

performance by his counse and may not obtain any relief based on this claim.[7]

### 5.      "Changed" Charge in the Indictment

Ziglar contends that his counsel was ineffective for failing to inform him that the original indictment was changed to charge him as an armed career criminal, increasing the mandatory minimum sentence he faced to 180 months' imprisonment. *See § 2255 Motion* (Doc. No. 1) at 9-10 & 14.

Ziglar's claim appears to be based on two erroneous assumptions. First, Ziglar evidently believes that the grand jury returned two indictments against him, the first charging him with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and limiting his punishment to 60 months in prison, and the second charging him with the same offense but enhancing his punishment to 180 months in prison. However, only one indictment was returned against Ziglar.[8]  Next, it appears that Ziglar believes that it was necessary for the grand jury's indictment to charge the prior offenses that were the predicate

---

[7]In originally asserting this claim in his § 2255 motion, it appears Ziglar may have misconstrued, as a reference to a purported plea offer, a statement made by Freeman to the court during the change of plea hearing that she believed Ziglar would be eligible for a sentence of from zero to ten years and that the possible maximum sentence of life imprisonment might be contested at Ziglar's sentencing hearing. *See Change of Plea Hearing* (Doc. No. 8, Gov. Exh. B) at 5-6.  As explained by Freeman at the evidentiary hearing, Freeman's statement to the court was intended to preserve as a possible claim, to be argued later at sentencing, that Ziglar should not be sentenced as an armed career criminal, in the event her office determined some matter favorable to Ziglar in this regard in the course of its presentence investigation.  In any event, it is undisputed that there was no such plea offer by the government in this case.

[8]Ziglar also suggests that the grand jury reconvened without his knowledge to return the second indictment and that the foreperson failed to sign this second indictment.  However, as indicated above, there was not a second indictment in Ziglar's case.  The first and only indictment contains the foreperson's signature.

convictions forming the basis of his classification and sentence enhancement as an armed career criminal under 18 U.S.C. § 924(e).  However, proof of those priors – four felony convictions for burglary – was a sentencing issue for the trial court.

Because the original indictment was not "changed" to charge Ziglar with a different offense, there is no merit to his allegations.  Consequently, he cannot prevail on this claim of ineffective assistance of counsel.

### 6.       Failure to Move for Downward Departure

Finally, Ziglar alleges that his counsel rendered him ineffective assistance by failing to move for a downward sentencing departure on his behalf.  *See § 2255 Motion* (Doc. No. 1) at 6 & 15.  Ziglar asserts that his "lack of mental stability due to prior and known existing conditions" constituted a basis for seeking a downward departure in his case.  *Id*. at 15.

To be eligible for consideration of a downward departure based on diminished mental capacity, a defendant must demonstrate, *inter alia*, "that his reduced mental capacity 'contributed' to the commission of the crime."  *See United States v. Ruff*, 998 F.Supp. 1351, 1361 (M.D. Ala. 1998); U.S.S.G. § 5K2.13.  A departure based on diminished mental capacity "'requires a showing that the defendant's reduced mental capacity contributed to the commission of the offense; such a link cannot be assumed.'"  *Ruff*, 998 F.Supp at 1361 (quoting *United States v. Frazier*, 979 F.2d 1227, 1230 (7th Cir. 1992)).  A "departure is warranted if the defendant's reduced mental capacity prevents the defendant from appreciating the wrongfulness of the offense, or if the defendant understands the wrongfulness of the act, but the reduced mental capacity renders the defendant unable to

16

control the offensive conduct." *Ruff*, 998 F.Supp. at 1361.

Although Ziglar can point to evidentiary materials indicating his history of depression, bipolar disorder, and substance abuse problems, there is no indication in the record that his mental impairments prevented him from appreciating the wrongfulness of his conduct or rendered him unable to control his behavior at the time he committed the offense.[9] Thus, a downward departure based on diminished mental capacity or "lack of mental stability" was not warranted in Ziglar's case. *See* U.S.S.G. § 5K2.13. Accordingly, this court concludes that Ziglar has failed to demonstrate that his counsel's failure to pursue a downward departure on the basis asserted by Ziglar fell below an objective standard of reasonableness and prejudiced his case. *See Strickland*, 466 U.S. at 687-89. Ziglar is not entitled to relief based on this claim of ineffective assistance of counsel.

### III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Ziglar be denied, as the claims therein entitle him to no relief.

It is further

ORDERED that the parties shall file any objections to this Recommendation **on or before September 1, 2009.** A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's proposed

---

[9]The psychologist who conducted the forensic psychological evaluation of Ziglar concluded that Ziglar was competent both at the time of his offense and to assist in his defense.

findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done, this 18th day of August, 2009.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE